# United States Court of Appeals
## For the First Circuit

No. 15-1183

APURV GUPTA, M.D.; VICTOR MUNGER,

Plaintiffs, Appellants,

v.

QUINCY MEDICAL CENTER, A STEWARD FAMILY HOSPITAL, INC.,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Rya W. Zobel, U.S. District Judge]

---

Before

Howard, Chief Judge,
Souter, Associate Justice,[*]
Lipez, Circuit Judge.

---

Leah L. Miraldi, with whom Bruce W. Gladstone, Cameron & Mittleman LLP, Charles R. Bennett, Jr., and Murphy & King, P.C. were on brief, for appellants.
Jonathan W. Young, with whom Scott R. Magee and Locke Lord LLP were on brief, for appellee.

---

June 2, 2017

---

* The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**LIPEZ**, **Circuit Judge**.   This appeal involves the bankruptcy of Quincy Medical Center, Inc., QMC ED Physicians, Inc. and Quincy Physician Corporation ("Debtors").   Apurv Gupta and Victor Munger ("Appellants"), former senior executives of Debtors, appeal the district court's ruling that the bankruptcy court lacked subject matter jurisdiction over their post-confirmation claims for severance payments against the purchaser of Debtors' assets. Because we agree that the bankruptcy court had no jurisdiction over Gupta's and Munger's claims, we affirm.

**I.**

The facts pertinent to this appeal -- none of which are disputed -- are fully set forth in the opinions of the bankruptcy court and the district court.  See Quincy Med. Ctr. v. Gupta, Nos. 12-cv-40128-RWZ and 12-cv-40131-RWZ, 2015 WL 58633, at *1-2 (D. Mass. Jan. 5, 2015); In re Quincy Med. Ctr., Inc., 479 B.R. 229, 231-33 (Bankr. D. Mass. 2012); In re Quincy Med. Ctr., Inc., 466 B.R. 26, 27-32 (Bankr. D. Mass. 2012).  We assume familiarity with the decisions below and discuss only the pertinent facts here.

Gupta and Munger were senior executives at Quincy Medical Center, a hospital operated by Debtors in Quincy, Massachusetts.  On June 30, 2011, Debtors signed an Asset Purchase Agreement (the "APA") whereby they agreed to sell substantially all of their assets to Quincy Medical Center, a Steward Family Hospital, Inc. f/k/a Steward Medical Holdings Subsidiary Five,

- 2 -

Inc. ("Steward").[1]  One day later, on July 1, 2011, Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code, and a motion (the "Sale Motion") under sections 363 and 365 of the Bankruptcy Code seeking bankruptcy court approval of the APA.  See 11 U.S.C. §§ 363, 365.

Sections 5 and 9 of the APA, which deal with the continued employment of Debtors' former employees, are relevant to Appellants' claims.  Specifically, section 9.1 provides:

> Not later than ten (10) Business Days prior to the Closing, [Steward] shall offer employment by [Steward] to each of the Employees who remain employed by [Debtors] as of a recent date, . . . such employment to commence immediately following the Closing. . . . Such individuals who accept such offer of employment are hereinafter referred to as the "Transferred Employees."

Section 9.2 further provides that Steward is obligated to pay each transferred employee "base wage and salary levels provided to such Employees immediately prior to the Closing" for no less than three months after the closing date.  Additionally, section 5.14(c) of the APA provides that "upon [Steward's] termination of the employment . . . of any employees . . . of [Debtors] at or following the Closing, [Steward] shall be liable to any of such persons for severance or retention pay or any other payments otherwise due them as employees . . . for [Debtors]."

---

[1] Steward is a subsidiary of Steward Health Care System, a Boston-based for-profit healthcare company that operates hospitals in New England.

On September 26, 2011, the bankruptcy court issued an order (the "Sale Order") approving the APA as requested in the Sale Motion.  The sale closed on October 1, 2011.  Six days later, Debtors filed a proposed Chapter 11 plan of reorganization (the "Plan").  The bankruptcy court thereafter confirmed the Plan (the "Confirmation Order").

The Sale Order and the Plan each contain provisions regarding the retention of jurisdiction by the bankruptcy court over any disputes arising under them.  The Sale Order provides:

> It is necessary and appropriate, in order to ensure the validity of the sale of the Assets to Steward and to ensure compliance with this Order, for this Court to retain jurisdiction to: (a) interpret and enforce the provisions of the APA, the Assigned Agreements, the Sale Motion and this Order; (b) protect Steward and any of the Assets against any Lien or Claim; (c) resolve any disputes arising under or relating to the APA, the Assigned Agreements, the Sale Motion and this Order; and (d) determine the validity, extent and priority of asserted pre-Closing Liens or Claims on, and the disposition of the gross proceeds of sale of, the Assets.

Similarly, the Plan provides that

> Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall, to the maximum extent permitted by applicable law, retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to: . . .

15. Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code; . . . .

29. Enforce all orders previously entered by the Bankruptcy Court; . . . .

The Confirmation Order also incorporates the retention of jurisdiction provision from the Plan.

On October 7, 2011, Appellants received letters from Debtors stating that their employment was terminated effective October 1, i.e., the day the sale closed. Appellants subsequently sought severance pay from Debtors by filing motions in the bankruptcy court for allowance of administrative expenses against Debtors. The bankruptcy court denied administrative expense status to both claims. However, the court held that Appellants' motions should be treated as "seeking relief in the alternative . . . for an order directing Steward to pay the claims."[2] The

---

[2] In the proceedings before the bankruptcy court, Appellants originally argued that their claims for severance pay against Debtors qualified as expenses of administration of a Chapter 11 case under 11 U.S.C. § 503(b)(1). In opposing these claims, Debtors argued that the claims were properly against Steward because Steward had violated the APA by not offering employment to Appellants. Citing our opinions in Mason v. Official Comm. of Unsecured Creditors (In re FBI Distrib. Corp.), 330 F.3d 36, 41 (1st Cir. 2003) and Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950, 954 (1st Cir. 1976), the court denied Appellants' claims against Debtors, holding that "[s]everance pay is entitled to administrative expense priority only to the extent it is tied to the employee's length of service" and only for the portion of severance pay "attributable to post petition services." Hence, the court held that, because the severance pay claims were unrelated to Appellants' salaries and lengths of service with Debtors, the claims were "not entitled to treatment as expenses of

court found that it had subject matter jurisdiction to hear the claims against Steward pursuant to the retention of jurisdiction provisions of the Sale Order and the court's authority to interpret and enforce its own prior orders. The bankruptcy court offered Steward an opportunity to respond, and Steward filed its objections.

Following a non-evidentiary hearing at which Gupta, Munger, and Steward were heard, the bankruptcy court found Steward liable to Appellants under the APA for their severance pay. Steward appealed to the district court, which concluded that the bankruptcy court lacked subject matter jurisdiction over Appellants' claims. Specifically, the district court found that Appellants' claims against Steward fell outside the bankruptcy court's statutorily granted jurisdiction and that the retention of jurisdiction provision relied upon by the bankruptcy court did not change this analysis. The district court therefore vacated the judgments against Steward and remanded with instructions to dismiss Appellants' claims. This appeal followed.

---

administration under Bankruptcy Code § 503(b)(1)." The court went on to find, however, that because Appellants' claims also alleged that "Steward violated the terms of the APA by not offering them employment post-closing" and because the APA was made binding on both Appellants and Steward, the court would treat the claims as "seeking . . . an order directing Steward to pay [the claims]."

## A. Jurisdictional Principles

Appellants contend that the district court erred in concluding that their severance claims against Steward fell outside the bankruptcy court's statutorily granted jurisdiction. Thus, we first must examine the statutory scheme establishing the bankruptcy court's jurisdiction, understanding that the "jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). We examine the bankruptcy court's findings of fact for clear error and afford de novo review to its conclusions of law. See Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 66 (1st Cir. 2004).

The general grant of bankruptcy jurisdiction is found in 28 U.S.C. § 1334, which establishes two main categories of bankruptcy matters over which the district courts have jurisdiction: "cases under title 11," 28 U.S.C. § 1334(a), and "proceedings arising under title 11, or arising in or related to cases under title 11," 28 U.S.C. § 1334(b). See also Middlesex Power Equip. & Marine, Inc. v. Town of Tyngsborough, Mass. (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 66 (1st Cir. 2002). "[C]ases under title 11" refers only to the bankruptcy petition itself, and it is the umbrella under which all of the

proceedings[3] that follow the filing of a bankruptcy petition take place.  Id.  In turn, 28 U.S.C. § 157 permits the district courts to refer to bankruptcy courts all "proceedings arising under title 11 or arising in or related to cases under title 11."[4]  This broad jurisdictional grant allows the bankruptcy courts to "deal efficiently and expeditiously with all matters connected with the bankruptcy estate."[5]  Celotex, 514 U.S. at 308 (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).

---

[3] The term "proceeding," as used in 28 U.S.C. § 1334(b), refers "to the steps within the 'case' and to any subaction within the case that may raise a disputed or litigated matter."  Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1141 n.14 (6th Cir. 1991).

[4] Section 157(a) leaves it up to the district courts whether to refer or not to refer cases and proceedings to the bankruptcy courts.  In practice, however, "each district court has provided by rule for automatic reference to bankruptcy judges."  Collier on Bankruptcy ¶ 3.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016).  Accordingly, the District of Massachusetts, by standing order, has delegated to the bankruptcy court all cases in which jurisdiction is premised on § 1334, see D. Mass. R. 201, subject to review by the district court (or, in the alternative, by the bankruptcy appellate panel) in accordance with 28 U.S.C. § 157(a). See also LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 5 (1st Cir. 1999) (discussing D. Mass. R. 201).

[5] Section 157 also divides bankruptcy proceedings into two further categories: "core" and "non-core."  Stern v. Marshall, 564 U.S. 462, 473-76 (2011).  These categories determine "[t]he manner in which a bankruptcy judge may act on a referred matter." Id. at 473.  Proceedings "arising under title 11, or arising in a case under title 11," are both considered "core proceedings" in which the bankruptcy court may enter final orders and judgments. Id. at 474 (citing 28 U.S.C. § 157(b)).  Proceedings merely "related to" a case under title 11 are considered "non-core" proceedings.  Stern, 564 U.S. at 477 (citing Collier on Bankruptcy ¶ 3.02[2], p. 3-26, n.5 (16th ed. 2010)("The terms 'non-core' and 'related' are synonymous.").  Although whether a bankruptcy

Hence, in order for Appellants' severance claims to fall within 28 U.S.C. § 1334's statutory grant of jurisdiction, the claims must "arise under," "arise in," or "relate to" a case under title 11. We have observed that the boundaries between these types of proceedings are not always easy to distinguish from each other. See In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68 (noting that "[t]he dividing line is unclear between proceedings that 'arise under' as opposed to 'arise in' and as opposed to 'relate to' title 11. The statute itself provides no definitions."). Nonetheless, each term has a particular scope that matters for the jurisdictional analysis here.

The "arising under" language of § 1334(b) is "analogous to the 'arising under' language in 28 U.S.C. § 1331." In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68 (comparing "arising under" jurisdiction to federal question jurisdiction). In other words, proceedings "aris[e] under title 11" when the Bankruptcy Code itself creates the cause of action. See Stoe v. Flaherty, 436 F.3d 209, 217 (3d Cir. 2006) (noting that "arising under" jurisdiction is limited to proceedings where "the Bankruptcy Code creates the cause of action or provides the

---

proceeding is a core proceeding is analytically separate from whether there is jurisdiction, "by definition all core proceedings are within the bankruptcy court's jurisdiction." Continental Nat'l Bank v. Sanchez (In re Toledo), 170 F.3d 1340, 1345 n.6 (11th Cir. 1999) (citing 28 U.S.C. §§ 157(b)(1), 1334(b)).

substantive right invoked"); Wood v. Wood (In re Wood), 825 F.2d 90, 96 (5th Cir. 1987) ("Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11.").

We have defined "arising in" proceedings generally as "those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."  In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68; see also Stoe, 436 F.3d at 218 ("[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case."); In re Toledo, 170 F.3d at 1345 (stating that proceedings "arising in" bankruptcy are "matters that could arise only in bankruptcy").  "Arising in" proceedings include such things as administrative matters, orders to turn over property of the estate, and determinations of the validity, extent, or priority of liens.  See Collier on Bankruptcy ¶ 3.01[3][e][iv] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016)[hereinafter Collier] (noting that "administrative matters" such as allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans, orders permitting the assumption or rejection of contracts, are the principal constituents of "arising

in" jurisdiction, and that "[i]n none of these instances is there a 'cause of action' created by statute, nor could any of the matters illustrated have been the subject of a lawsuit absent the filing of a bankruptcy case").

By contrast, "related to" proceedings are those "which 'potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate.'" In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68 (quoting In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991)); see also Celotex, 514 U.S. at 308 ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." (emphasis omitted) (citing Pacor, 743 F.2d at 994)). Although "related to" jurisdiction "cannot be limitless," Celotex, 514 U.S. at 308, it is nonetheless "quite broad." Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.), 410 F.3d 100, 105 (1st Cir. 2005) (noting that Congress deliberately allowed the cession of wide-ranging "related to" jurisdiction to the bankruptcy courts "to enable them to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates").

- 11 -

## B. Application of the Jurisdictional Principles

The bankruptcy court never determined whether it had "arising under," "arising in," or "related to" jurisdiction over Appellants' claims. Instead, the court concluded that it had jurisdiction solely on the basis of the retention of jurisdiction provisions in the Sale Order and the Plan. This approach was erroneous.

Bankruptcy courts -- like all federal courts -- may retain jurisdiction to interpret and enforce their prior orders. See Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009) (Souter, J.) (noting that bankruptcy courts "plainly ha[ve] jurisdiction to interpret and enforce . . . prior orders"). However, a bankruptcy court may not "retain" jurisdiction it never had -- i.e., over matters that do not fall within § 1334's statutory grant. See Celotex, 514 U.S. at 307. A retention of jurisdiction provision may not alter the fact that "the source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157." U.S. Brass Corp. v. Travelers, Ins. Group (In re U.S. Brass Corp.), 301 F.3d 296, 303 (5th Cir. 2002).

Hence, despite the routine inclusion of retention-of-jurisdiction provisions in Chapter 11 plans, see Collier ¶ 1123.02, they may be given effect only if there is jurisdiction under 28

- 12 -

U.S.C. § 1334.  See Valley Historic Ltd. P'ship. v. Bank of N.Y., 486 F.3d 831, 837 (4th Cir. 2007) ("[N]either the parties nor the bankruptcy court can create § 1334 jurisdiction by simply inserting a retention of jurisdiction provision in a plan of reorganization if jurisdiction otherwise is lacking . . . ."); Binder v. Price Waterhouse & Co., (In re Resorts Int'l., Inc.), 372 F.3d 154, 161 (3d Cir. 2004) (stating that, absent jurisdiction under § 1334, "retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant"); Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159, 164 (7th Cir. 1994) ("[O]rders approving [a] bankruptcy sale [or] . . . plan of reorganization . . . [cannot] confer jurisdiction.  A court cannot write its own jurisdictional ticket.").

Therefore, the question before us is whether Appellants' claims for severance pay from Steward are proceedings which "arise under," "arise in," or are "related to" the chapter 11 bankruptcy such that they fall within the grant of jurisdiction contained in 28 U.S.C. § 1334.  Given Appellants' silence in their briefing on "arising under" and "related to" jurisdiction, they do not appear to dispute that neither form of jurisdiction applies to their claims for severance pay.  Their failure to expressly argue that either form of jurisdiction applies is understandable. Appellants' claims for severance pay from Steward derive solely from Steward's alleged breach of sections 5 and 9 of the APA.

- 13 -

Hence, their claims do not "arise under" title 11 because Massachusetts contract law, rather than the Bankruptcy Code, creates their cause of action. See In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68; In re Wood, 825 F.2d at 96. Similarly, these claims fall outside even the broad statutory grant of "related to" jurisdiction in that Appellants' claims against Steward could have no conceivable impact upon Debtors' bankruptcy estate. See Celotex, 514 U.S. at 307; In re Boston, 410 F.3d at 105. Indeed, Appellants state in their brief that "the Bankruptcy Court's subject matter jurisdiction here is not based on 'related to' jurisdiction."

Appellants insist, however, that their claims against Steward "arise in" a bankruptcy case because the APA was approved by the bankruptcy court in the Sale Order pursuant to 11 U.S.C. §§ 363 and 365, and, invoking language from one of our prior cases, such an order may "only be issued by a bankruptcy court." In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68-69. Thus, Appellants contend, their state law claims "arise in" Debtors' bankruptcy case because, "but for" Debtors' Chapter 11 case and the Sale Order approving the sale of Debtors' assets to Steward in the APA, their claims for severance pay would not exist.

This argument misapprehends the relevant law. As we have explained, it is not enough for "arising in" jurisdiction that a claim arose in the context of a bankruptcy case. Instead,

- 14 -

our case law makes clear that for "arising in" jurisdiction to apply, the relevant proceeding must have "no existence outside of the bankruptcy." Id. at 68 (quoting In re Wood, 825 F.2d at 97). Hence, there is no "but for" test for "arising in" jurisdiction as Appellants suggest. That is, "the fact that a matter would not have arisen had there not been a bankruptcy case does not ipso facto mean that the proceeding qualifies as an 'arising in' proceeding." Collier ¶ 3.01[3][e][iv]. Instead, the fundamental question is whether the proceeding by its nature, not its particular factual circumstance, could arise only in the context of a bankruptcy case. In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68. In other words, it is not enough that Appellants' claims arose in the context of a bankruptcy case or even that those claims exist only because Debtors (Appellants' former employer) declared bankruptcy; rather, "arising in" jurisdiction exists only if Appellants' claims are the type of claims that can only exist in a bankruptcy case.

In re Middlesex Power Equip. & Marine, Inc. provides no support for Appellants' contrary position. In that case, we held, inter alia, that a bankruptcy court had "arising under" or "arising in" jurisdiction to decide the scope of a sale order provision authorizing certain assets to be sold "free and clear of liens." 292 F.3d at 68; see also Elliott v. GM LLC (In re Motors Liquidation Co.), 829 F.3d 135, 153 (2d Cir. 2016) ("A bankruptcy court's

- 15 -

decision to interpret and enforce a prior sale order falls under . . . 'arising in' jurisdiction."). Appellants point to this language, insisting that their claims, "although framed as state law claims . . . depend upon an interpretation of the Bankruptcy Court's Sale Order." Appellants' argument misses the mark, however, because the bankruptcy court's mere approval of Debtors' sale of assets to Steward did not automatically create jurisdiction over all future contract disputes somehow related to the APA.[6] Hence, unlike Middlesex Power Equip. & Marine, Inc., which involved the interpretation of a specific provision of a sale order, Appellants here have failed to identify any provision of the Sale Order itself or any related questions of bankruptcy law underlying their claims that would require interpretation by the bankruptcy court. Indeed, the bankruptcy court's own analysis of Appellants' claims was based entirely on the terms of the APA and state contract law. The court mentioned the Sale Order only in reference to the retention-of-jurisdiction provision.

---

[6] Indeed, the "but for" test articulated by Appellants for "arising in" jurisdiction would potentially eliminate the boundaries of "related to" jurisdiction, allowing a party to invoke the "core" jurisdiction of the bankruptcy court even for claims that could have no conceivable impact "upon the handling and administration of the bankrupt estate." In re Boston, 410 F.3d at 105; See also Celotex, 514 U.S. at 308 n.6 ("[B]ankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."); Collier ¶ 3.01[3][e][iv](noting that a "but for" test for "arising in" jurisdiction "would surely expand bankruptcy jurisdiction well beyond that which is constitutional").

Therefore, a court deciding Appellants' claims on the merits would only need to perform a state law breach of contract analysis. As the district court explained, Appellants' claims "look like ones that could have arisen entirely outside the bankruptcy context. They are essentially employment disputes that could arise in any asset sale, regardless of whether the sale involved a bankruptcy proceeding." Appellants' claims are therefore not merely "framed as state law claims," but are claims which may be decided solely under Massachusetts law. See Stoe, 436 F.3d at 218 (holding that state-law action to recover unpaid severance benefits from officers of former employer did not "arise in" a bankruptcy case). See also Marotta Gund Budd & Dzera LLC v. Costa, 340 B.R. 661, 669 (D.N.H. 2006) (holding that defamation action is not a proceeding "arising in" a bankruptcy case).[7]

---

[7] Our conclusion here is buttressed by the fact that Appellants filed almost identical claims for breach of the APA against Steward in Massachusetts state court while this appeal was pending. See Munger et al. v. Quincy Medical Center, a Steward Family Hospital, Inc., Civil Action No. 15-2099-C. On October 11, 2016, the state court granted summary judgment for Steward on Appellants' claims. Id. In deciding the summary judgment motion, the state court made no reference to any part of the Sale Order itself, instead relying only on the existence vel non of Appellants' contractual rights under the APA. Given these facts, Appellants' claims can hardly "depend upon an interpretation of the Bankruptcy Court's Sale Order."

We further note that both parties were remiss in failing to inform this court of the outcome of the state court proceedings. The state court's grant of summary judgment does not, however, moot the question of whether the bankruptcy court had subject matter jurisdiction over Appellants' claims in federal court. Rather, if we were to conclude that the bankruptcy court had

In short, Appellants' claims do not fit into the narrow category of matters that "have no existence outside of the bankruptcy," In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68, or that "could only arise in the context of a bankruptcy," Stoe, 436 F.3d at 218. Hence, the bankruptcy court did not possess "arising in" jurisdiction over Appellants' claims.

**AFFIRMED**

---

jurisdiction, the district court on remand would have to address a number of complex procedural questions, including the potential preclusive effect of the state court proceedings. However, because we find that the bankruptcy court lacked subject matter jurisdiction over Appellants' claims, those issues do not arise.