*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF SOUTHFIELD,

Plaintiff-Appellant,

v

SHEFA, LLC,

Defendant-Appellee,

and

ELBAZ/BUILDING, LLC, doing business as
ELBAZ BUILDING and doing business as ELBAZ
BUILDING, LLC,

Defendant.

FOR PUBLICATION
February 10, 2022
9:05 a.m.

No. 350885
Oakland Circuit Court
LC No. 2019-175286-CZ

Before: RIORDAN, P.J., and MARKEY and SWARTZLE, JJ.

SWARTZLE, J.

"Who decides?" is a question asked recently by prominent jurists,[1] though it is a question as timeless as it is timely. The question arises whenever there is a dispute involving the separation of powers between branches of the same sovereign, and it similarly arises whenever there is a dispute involving the jurisdiction of different sovereigns. In this appeal, the question arises in a dispute involving a hotel whose owner entered and exited federal bankruptcy proceedings, and now the city where the hotel is located seeks relief from that owner for alleged violations of state law.

---

[1] See, e.g., *Nat'l Federation of Indep Business v US Dep't of Labor*, 595 US __; __ S Ct __; __ L Ed 2d __ (2022) (GORSUCH, J, concurring); *id.* (BREYER, SOTOMAYOR, and KAGAN, JJ, jointly dissenting); Sutton, *Who Decides?: States as Laboratories of Constitutional Experimentation* (Oxford University Press, 2022).

In this lawsuit for declaratory relief, appointment of receiver, and judicial foreclosure, plaintiff City of Southfield appeals as of right the circuit court's order granting summary disposition in favor of defendant Shefa, LLC. The circuit court concluded that a federal district court had exclusive jurisdiction over the city's claims because the claims related to defendant's now-closed bankruptcy case. In so holding, however, the circuit court misstated and misapplied federal law. We conclude that the circuit court has subject-matter jurisdiction over, at least, several of the city's claims and, therefore, the circuit erred by dismissing the entire case under MCR 2.116(C)(4). Moreover, the circuit court erred by dismissing the city's claims under MCR 2.116(C)(10) when discovery was still in its infancy. Accordingly, we reverse.

## I. BACKGROUND

### A. PROCEEDINGS IN BANKRUPTCY COURT

This appeal concerns real property owned by defendant and located at 16400 J. L. Hudson Drive, in Southfield, Michigan. The property is a 14-story, 427-room hotel built in 1974 on nine acres. See *In re Shefa, LLC*, 524 BR 717, 721 (Bankr ED Mich, 2015), aff'd 535 BR 165 (ED Mich, 2015). In 2014, defendant filed for Chapter 11 bankruptcy protection under the federal bankruptcy code, 11 USC 101 *et seq.*, in the United States Bankruptcy Court for the Eastern District of Michigan. During pre-confirmation proceedings, the bankruptcy judge described the case as a "single asset real estate Chapter 11 bankruptcy case involving a vacant hotel," in which the Oakland County Treasurer was the largest creditor. *Id.* at 720. When the petition was filed, taxes on the property had not been paid since 2005, while water and sewerage charges had not been paid since 2009, resulting in defendant's indebtedness to the Oakland County Treasurer in the approximate amount of $3,787,000. *Id.* at 723.

During pre-confirmation proceedings in 2015, the bankruptcy judge described the condition of the property as follows:

> The Hotel is in poor condition. It has deteriorated greatly over the last several years, especially since it closed. The Appraisal indicates that there is extensive damage to the Hotel's plumbing and electrical systems caused by building scrappers and scavengers, and that there has been extensive theft of copper wire and pipes from the Hotel. The Appraisal also notes that there are significant water leaks in the roof, and there are many broken skylights and window walls on the first floor to contribute to those leaks. Even before the Hotel was shut down in 2010, there were already several items of deferred maintenance, all of which have only gotten worse since that time. Overall, the Hotel has a solid building structure, but it is in very poor shape internally and needs extensive repair. [*Id.* at 723-724.]

As reiterated by the federal district court (sitting as an appellate court to review the decisions of the bankruptcy judge), the hotel's value had decreased significantly "due to its deteriorating condition and location in a declining area." *In re Shefa*, 535 BR at 170.

In early 2016, the bankruptcy judge confirmed a consensual Chapter 11 plan. See *In re Shefa, LLC*, unpublished order of the United States Bankruptcy Court for the Eastern District of Michigan, issued February 19, 2016 (Case No. 14-42812). The order contained several provisions

relevant to the current dispute: (1) defendant must execute a deed to the property in favor of the city, to be held in escrow by a title company, and the city had the right (but not the obligation) to release the deed from escrow under certain circumstances; (2) defendant must execute a limited power of attorney in favor of the city's mayor and clerk, authorizing them to execute a deed to the property in favor of the city under certain circumstances; (3) defendant must execute and deliver a first priority mortgage in favor of the city; (4) the deed documents would be released from escrow and returned to defendant, and the city's mortgage would be discharged, upon confirmation that at least $2,100,000 had been used on physical improvements to the property; and (5) defendant must obtain approval for its improvements within 180 days of the effective date of the plan. *Id*. at 4-6.

The plan included the following retention-of-jurisdiction provisions:

> This Court shall retain jurisdiction in this matter until the Plan has been fully consummated including, but not limited to, the following reasons and purposes:
>
> * * *
>
> B. The determination of all questions and disputes regarding title to the assets of the estate or Debtor, . . .
>
> * * *
>
> E. The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in support of confirmation of this Plan.
>
> F. The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of Debtor, the Reorganized Debtor or any party-in-interest, . . . . [See *In re Shefa, LLC*, 579 BR 438, 441 (Bankr ED Mich, 2017), aff'd by *In re Shefa, LLC*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued February 25, 2019 (Case No. 18-10073).]

The order stated that the court "shall retain jurisdiction for the enforcement of the foregoing terms [stated in the order], the confirmed Plan and this Order" and stated that, to "the extent inconsistent, the provisions of this Order shall control over" the plan. *In re Shefa, LLC*, unpub order at 6.

Defendant executed a mortgage in favor of the city in March 2016. Defendant covenanted in that mortgage that it would "pay when due, prior to the imposition of penalties and interest, all taxes, assessments, and governmental charges levied" upon the property. The mortgage included a paragraph addressing waste and appointment of a receiver:

> 17. Waste. Grantor's failure, refusal, or neglect to pay any taxes or assessments levied against the Property will constitute waste under Michigan Compiled Laws 600.2927, and the Mortgagee shall have a right to appointment of a receiver of the Property and of the rents and income from the Property, with such powers as the Court making such appointment confers. Grantor hereby irrevocably consents to such appointment in such event, and agrees that Mortgagee's costs and expenses, including reasonable attorney fees, incurred in such proceeding shall be added to the Liabilities secured by this Mortgage. Payment by the Mortgagee for and on

-3-

behalf of Grantor of any delinquent taxes, assessments, or insurance premiums payable by Grantor under the terms of this Mortgage will not cure the default herein described nor in any manner impair the Mortgagee's right to appointment of a receiver as set forth herein.

The mortgage also contained a paragraph regarding remedies for default. This paragraph granted the city the right to foreclose the mortgage and sell the property at public auction or judicially foreclose the mortgage under MCL 600.3101 *et seq*., "upon the occurrence of an event of default under any of the Liabilities, as defined in the Confirmation Order, or any default in the performance of any of the covenants, conditions and agreements contained in this Mortgage." Finally, the mortgage provided that, if any lien was recorded against the property, the city had the authority "at its option and without notice, [to] declare the entire Liabilities to be immediately due and payable and may institute all proceedings, including foreclosure of this Mortgage," as the city deemed necessary to protect its interest in the property.

The bankruptcy judge closed the case in February 2017, but several months later, the judge briefly reopened the case to rule on a motion of default filed by the city. See *In re Shefa, LLC*, 579 BR at 440. The city alleged that defendant had defaulted under the confirmed plan and order in several ways: defendant had failed to make sufficient progress on renovating the subject property; the city had issued letters of default to defendant on five occasions for defendant's various failures to meet its obligations under the confirmed plan and order; and the site plan obtained by defendant had expired without being renewed or extended. *Id*.

The bankruptcy judge held that the court had subject-matter jurisdiction to decide the city's motion under 28 USC 1334(b). *Id*. The bankruptcy judge further held that the city's motion qualified as a "core proceeding" for two reasons: it was a proceeding "affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship" under 28 USC 157(b)(2)(O), and it was a proceeding "arising in" a case under title 11, within the meaning of 28 USC 1334(b). *Id*. at 440-441. The bankruptcy judge concluded that the city's motion presented a dispute over which the court had retained jurisdiction under the confirmed plan and order. *Id*.

In addressing the city's arguments, the bankruptcy judge held open the possibility that the city had potential recourse against defendant, outside the remedies provided in the confirmed plan and order:

> It is clear that [defendant] is not guilty of "doing nothing," even though the City is not satisfied with [defendant's] progress. Nor has the City demonstrated that it would be without any recourse *outside the confirmed Plan*, under applicable *nonbankruptcy law*, to address such an extreme situation of [defendant] doing nothing to renovate the Property after obtaining site plan approval. To the contrary, during the hearing, for example, the City's counsel alluded to the possible actions of (1) *foreclosing on the City's mortgage* on the Property; and (2) declaring the building on the Property *a nuisance and demolishing it*. [*Id*. at 446 (emphasis added).]

The bankruptcy judge denied the city's motion because the city had failed to demonstrate that an event of default had occurred, as described under the confirmed plan and order; the bankruptcy

-4-

judge further concluded that, even if an event of default had occurred, the city was not entitled to the relief that it sought. *Id*. at 445.

The city appealed the bankruptcy judge's order to the federal district court. *In re Shefa, LLC*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued February 25, 2019 (Case No. 18-10073). The district court affirmed, concluding that the bankruptcy judge did not abuse any discretion by finding that the city had failed to identify an event of default. *Id*. at 16.

## B. PROCEEDINGS IN STATE CIRCUIT COURT

While the federal proceedings were taking place, Elbaz/Building, LLC filed a construction lien for unpaid labor and materials against the property, in the amount of $215,766. Later in March 2019, a fire started by an intruder damaged the property. The local fire department estimated that the fire damage was relatively modest (i.e., approximately $3,200).

In July 2019, the city sued defendant in Oakland County Circuit Court. (The city also sued Elbaz/Building, LLC, but the company was later dismissed and is not a party to this appeal.) In Count I, the city sought a declaration that the property was a "dangerous building" as defined in MCL 125.539(b), (g), (i), and (j), and a "nuisance" as defined in MCL 125.402(18). In Count II, the city sought the appointment of a receiver because defendant had failed to pay timely various taxes, which qualified as waste and entitled the city to the appointment of a receiver under the terms of the parties' mortgage. The city further alleged that defendant had violated the mortgage and confirmed plan and order by failing to comply with various ordinances and environmental laws and allowing a lien to be recorded against the property. Finally, in Count III, the city sought judicial foreclosure of the mortgage, alleging that defendant had defaulted on its obligations under both the mortgage and the confirmed plan and order. Shortly after filing its complaint, the city moved for an appointment of a receiver, relying on statute, court rule, and the parties' mortgage agreement. The circuit court held a hearing on the city's motion and denied the motion that same day without explanation.

In lieu of answering the city's complaint, defendant moved for summary disposition under MCR 2.116(C)(4) (subject-matter jurisdiction), (7) (prior judgment), (8) (state a claim), and (10) (genuine issue of material fact) in August 2019. As part of the motion, defendant sought sanctions under MCR 2.109 (frivolous claims). The city opposed the motion, to which defendant replied in support of its motion. The circuit court held a hearing on the motion in September 2019, and the parties argued consistent with their respective briefs. With respect to the alleged code violations, the city offered to provide documentary evidence in support, but the circuit court declined, explaining: "Listen, I'm not—right now, I'm not addressing what the state of the building is or isn't. It—in the sense that I—I just want to know what jurisdiction I have 'cause it seems like the bankruptcy court either has addressed these issues or maybe still is. But you're telling me that's not the case." At the conclusion of the hearing, the circuit court took the matter under advisement.

The circuit court subsequently issued a written opinion and order granting defendant's motion for summary disposition under MCR 2.116(C)(4) and (10). The circuit court first explained its understanding of federal bankruptcy jurisdiction:

This case is somewhat unusual because Plaintiff, at least in part, is petitioning a state trial court to enforce an order of the United States Bankruptcy Court arising out of Defendant Shefa LLC's chapter 11 bankruptcy. Under 28 USC § 1334 the US District Courts have exclusive and original jurisdiction over all cases under or related to title 11 involving "all of the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate. . . ." The US District Courts also have original but not exclusive jurisdiction over "all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327." *Id.*

Furthermore, 28 USC § 157(b)(1) allows bankruptcy judges to hear and determine all cases under title 11 and all core proceedings arising under title 11, which includes in § 157(b)(2)(N), "orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate." Proceedings which affect the "liquidation of the assets of the estate or the adjustment of debtor-creditor . . . relationship" are deemed core proceedings and are within the exclusive jurisdiction of the Bankruptcy Court. 28 USC § 157(b)(2)(O).

When the potential resolution of issues requires the interpretation of Plans and Orders issued by the Bankruptcy Court or concerns the disposition of a debtor's property that was subject to bankruptcy proceedings, the Bankruptcy Court likely retains jurisdiction. *Matter of Delaware & Hudson Ry Co*, 122 BR 887, 891 895; 21 Bank Ct Dec 437 (Bankr CA 3, 1991). Even where a claim is asserted on the basis of State law, that claim may still be subject to the jurisdiction of the Bankruptcy Court. 28 USC § 157(b)(3). *Matter of Delaware*, 122 BR at 895.

This is true even when the bankruptcy case has been closed. "[W]here there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan . . . retention of post-confirmation bankruptcy court jurisdiction is normally appropriate." *In Re Resorts Intern Inc*, 372 F3d 154, 168-169; 43 Bank Ct Dec 46 (Bankr CA 3, 2004), *In Re Thickstun Bros Equipment Co Inc*, 344 BR 515, 521; 46 Bankr Ct Dec 158 (Bankr CA 6, 2006). "[T]he 'close nexus' test is applicable to 'related to' jurisdiction over any claim or cause of action filed post-confirmation, regardless of when the conduct giving rise to the claim or cause of action occurred." *In Re Seven Fields Development Corp*, 505 F3d 237, 264-265; 48 Bankr Ct Dec 276 (Bankr CA 3, 2007). The Bankruptcy Court's jurisdiction over these issues can extend decades after a Plan was confirmed. *Travelers Indem Co v Bailey*, 557 US 137, 151; 129 S Ct 2195; 174 L Ed 2d (2009). It is these jurisdictional considerations that this Court finds dispositive in this case. [Opinion 5-6 (footnote omitted).]

In its analysis of bankruptcy jurisdiction, the circuit court focused on whether the city's requested relief "could be granted without preventing the consummation, implementation, or execution of the bankruptcy plan." *Id.* at 7-8. The circuit court concluded that each of the city's requested relief, if granted, would thwart the implementation of the bankruptcy plan. *Id.* at 8, 9, & 11. On

this basis, the circuit court concluded that it did not have subject-matter jurisdiction and granted summary disposition to defendant under MCR 2.116(C)(4). *Id.* at 12.

Despite finding that it did not have subject-matter jurisdiction, the circuit court also reached the merits of the city's claims for declaratory relief and appointment of a receiver. The circuit court concluded that summary disposition should be granted on these two claims for lack of a genuine issue of material fact under MCR 2.116(C)(10). *Id.* at 8-10, 12. On defendant's request for sanctions, the circuit court denied any relief, finding that it "cannot say that Plaintiff's argument was devoid of legal merit and frivolous." *Id.* at 11.

## C. NEW FEDERAL COURT PROCEEDING

In April 2020, defendant sued the city and others in the United States District Court for the Eastern District of Michigan. Defendant made several claims in that federal case that mirrored those made by the city here, including breach of contract, inverse condemnation, conspiracy, and constitutional violations. In its complaint, defendant invoked the district court's general jurisdiction under 28 USC 1331 and supplemental jurisdiction under 28 USC 1367(a); it did not invoke jurisdiction under the bankruptcy code. In September 2021, the district court dismissed all of defendant's claims under Federal Rule of Civil Procedure 12(b)(6), with the exception of defendant's state-law claim for inverse condemnation. The district court recognized that the city's appeal was before this Court, and with respect to matters of federal-court abstention, the district court noted that "the issue may be revisited at the request of the parties" once this appeal was resolved. *Shefa, LLC v City of Southfield*, unpublished order of the United States District Court for the Eastern District of Michigan, issued September 28, 2021 (Case No. 2:20-cv-11038).

## II. ANALYSIS

On appeal, the city argues that the circuit court erred in holding that the court lacked subject-matter jurisdiction to adjudicate the claims in this case. The city also argues that the circuit court erred in reaching and granting summary disposition under MCR 2.116(C)(10) on several of its claims. The city is correct on both fronts.

Before proceeding further, a brief note on nomenclature is helpful. Article III federal district courts have jurisdiction over bankruptcy cases. 28 USC 1334(a). Congress has authorized district courts to refer bankruptcy cases and related matters to Article I bankruptcy judges, 28 USC 157, and the United States District Court for the Eastern District of Michigan has done this via local rule, ED Mich LR 83.50. When we discuss the jurisdiction of federal district courts with respect to bankruptcy cases and related matters, we sometimes refer to the "bankruptcy court" or "bankruptcy judge" in this opinion. These and similar references should be understood to mean the bankruptcy judge working by reference under the jurisdiction of the federal district court.

## A. STANDARD OF REVIEW

The circuit court granted defendant's motion for summary disposition under MCR 2.116(C)(4) and (C)(10). Jurisdictional questions under MCR 2.116(C)(4) are questions of law that are reviewed de novo. *Frederick v Federal-Mogul Corp*, 273 Mich App 334, 336; 733 NW2d 57 (2006). "MCR 2.116(C)(4) permits a trial court to dismiss a complaint when the court lacks jurisdiction of the subject matter." *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321

Mich App 702, 714; 909 NW2d 890 (2017) (cleaned up). This Court likewise reviews de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *McLean v Dearborn*, 302 Mich App 68, 72; 836 NW2d 916 (2013).

## B. SUBJECT-MATTER JURISDICTION

We begin with the circuit court's subject-matter jurisdiction. "Subject-matter jurisdiction is the right of the court to exercise judicial power over a class of cases, not the particular case before it." *In re Warshefski*, 331 Mich App 83, 88; 951 NW2d 90 (2020) (cleaned up). "A trial court is duty-bound to recognize the limits of its subject-matter jurisdiction, and it must dismiss an action when subject-matter jurisdiction is not present." *Meisner*, 321 Mich App at 714. A challenge to a court's subject-matter jurisdiction is determined by allegations in the pleadings. *Trost v Buckstop Lure Co, Inc*, 249 Mich App 580, 587-588; 644 NW2d 54 (2002).

Circuit courts of this state have subject-matter jurisdiction over a broad swath of cases. As set forth in Article VI § 13 of our 1963 Constitution, circuit courts "have original jurisdiction in all matters not prohibited by law." Following this constitutional grant, the Legislature set forth the circuit court's jurisdiction as follows: "Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." MCL 600.605. "It is presumed that circuit courts have subject-matter jurisdiction unless jurisdiction is expressly prohibited or given to another court by constitution or statute." *In re Warshefski*, 331 Mich App at 88 (cleaned up).

With respect to the claims raised by the city, there is no serious question whether, *absent the bankruptcy proceedings*, the circuit court has subject-matter jurisdiction over the claims—it does. Generally speaking, claims of breach of a mortgage agreement, nuisance, and dangerous building can be brought in circuit court, as can requests for a receivership or foreclosure. See MCL 554.1016; MCL 600.2926; MCL 600.2927; MCL 600.2940; MCL 125.542; MCL 600.3101; MCL 600.601; MCL 600.605; *Bd of Co Rd Comm'rs for Co of Eaton v Schultz*, 205 Mich App 371, 375; 521 NW2d 847 (1994). The parties have not identified, and we are not aware of, any state statute that would divest the circuit court of subject-matter jurisdiction over the city's claims. Nor have the parties identified any federal statute outside of the bankruptcy context that is relevant to the circuit court's subject-matter jurisdiction, and similarly, we are not aware of any such federal statute. Having narrowed the inquiry, we turn now to the federal bankruptcy code.

## C. JURISDICTION OF FEDERAL DISTRICT COURTS OVER BANKRUPTCY MATTERS

In contrast to our state's circuit courts, federal district courts have jurisdiction over what can be characterized as a narrower swath of cases, understood in terms of subject matter if not geographical reach. Our federal system of government is one of limited sovereignty, *Nat'l Federation of Indep Business v Sebelius*, 567 US 519, 533; 132 S Ct 2566; 183 L Ed 2d 450 (2012), and that limited sovereignty is reflected in the narrower subject-matter jurisdiction of its courts, *Kokkonen v Guardian Life Ins Co of Am*, 511 US 375, 377; 114 S Ct 1673; 128 L Ed 2d 391 (1994). Doctrines of abstention, including that described as "Our Federalism," inform how federal and state courts interact when presented with competing arguments about which court should take jurisdiction over a particular cause of action. *Younger v Harris*, 401 US 37, 43-45; 91 S Ct 746;

27 L Ed 2d 669 (1971); see also 17B Wright & Miller, Federal Practice & Procedure: *Younger v Harris* (2021), § 4251.

The question here involves federal bankruptcy law, and as described by commentators, "[b]ankruptcy is a highly specialized subspecies of federal jurisdiction." 13D Wright & Miller, Federal Practice & Procedure: Bankruptcy (2021), § 3570. Until 1978, the jurisdiction of federal district courts over bankruptcy cases and matters was exclusive and complete. *Id.*

In 1984, Congress overhauled the bankruptcy code, including jurisdiction. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub L No 98-353, 98 Stat 333 (1984). With respect to the jurisdiction of district courts, section 1334 of the code provides in relevant part:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

\* \* \*

(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—

(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

(2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327. [28 USC 1334.]

Based on this section, courts have identified four distinct categories of bankruptcy matters over which district courts have subject-matter jurisdiction under section 1334(a) and (b). These are: (1) "cases under title 11"; (2) "proceedings arising under title 11"; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11. *In re Wolverine Radio Co*, 930 F2d 1132, 1141 (CA 6, 1991). "The first category refers merely to the bankruptcy petition itself, filed pursuant to 11 USC §§ 301, 302, or 303," *id.*, or, as explained by the U.S. Court of Appeals for the Sixth Circuit in *Robinson v Michigan Consol Gas Co Inc*, 918 F2d 579, 583 (CA 6, 1990), the phrase " 'cases under title 11' as used in section 1334(a) is a term of art signifying an action commenced in a federal district court or bankruptcy court with the filing of a petition pursuant to 11 USC §§ 301, 302 or 303." With respect to the other three categories, the Sixth Circuit streamlined the jurisdictional analysis in *In re Wolverine*:

For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between the second, third, and fourth categories (proceedings "arising under," "arising in," and "related to" a

case under title 11).  These references operate conjunctively to define the scope of jurisdiction.  Therefore, for purposes of determining section 1334(b) jurisdiction, it is necessary only to determine whether a matter is at least "related to" the bankruptcy.  [*In re Wolverine*, 930 F2d at 1141 (citations omitted).]

In its opinion and order in this case, the circuit court set forth the following with respect to bankruptcy jurisdiction: "Under 28 USC § 1334 the US District Courts have *exclusive and original jurisdiction* over all cases *under or related to* title 11 involving 'all of the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate. . . .' " Opinion at 5 (emphasis added).  As can be seen from the above excerpt of the bankruptcy code, the circuit court misstated federal law.  Pursuant to section 1334, district courts have exclusive jurisdiction over "all cases under title 11," i.e., cases brought by petition under 11 USC 301, 302 or 303.  Moreover, the district court where the bankruptcy case is commenced or pending has exclusive in rem jurisdiction over the res of the debtor and estate.  28 USC 1334(e)(1).  Finally, that district court also has exclusive jurisdiction over any claim involving the construction of 11 USC 327.  28 USC 1334(e)(2).  But, for those matters that merely arise under, arise in, or are otherwise related to a bankruptcy case, the district court has original jurisdiction, but such jurisdiction is *not* exclusive.  28 USC 1334(b); *Delphi Auto Sys, LLC v Segway Inc*, 519 F Supp 2d 662, 665 (ED Mich, 2007).  Rather, the federal and state courts have concurrent jurisdiction, and the matters can be heard by either one.  13D Wright & Miller, Federal Practice & Procedure: Bankruptcy (2021), § 3570.  The circuit court erred in stating otherwise.

This error undermined the circuit court's jurisdictional analysis.  The circuit court did not focus, for example, on whether the city's claims are part of defendant's bankruptcy case or involved construction of 11 USC 327, either one of which would have placed exclusive jurisdiction over the claims in the district court and divested the circuit court of jurisdiction.  Instead, the circuit court focused its attention on whether the claims are "related to" defendant's bankruptcy case.

It might well be the case that the district court has original jurisdiction over the city's claims under the "related to" component of 28 USC 1334(b), but this would not mean that such jurisdiction is also exclusive.  Even if the state-law claims are related to defendant's bankruptcy case, this would not divest the circuit court of subject-matter jurisdiction over those claims unless and until the district court decided in its discretion to take jurisdiction over those claims.  In instances where its jurisdiction is concurrent, not exclusive, the district court can abstain from taking jurisdiction over matters involving title 11 "in the interest of justice, or in the interest of comity with State courts or respect for State law."  28 USC 1334(c)(1); see also 28 USC 1334(c)(2) (outlining where abstention is required).

Similarly, as with its focus on "related to" proceedings, the circuit court's analysis of "core" versus "noncore" proceedings strayed from the relevant jurisdictional analysis.  Whether a matter is "core" or not has relevance to whether a bankruptcy judge has the authority to adjudicate one of the types of proceedings listed in 28 USC 157(b) or, instead, must make proposed findings of fact and conclusions of law to the district court.  *Wellness Int'l Network, Ltd v Sharif*, 575 US 665, 670-671; 135 S Ct 1932; 191 L Ed 2d 911 (2015); *Exec Benefits Ins Agency v Arkison*, 573 US 25, 33-34; 134 S Ct 2165; 189 L Ed 2d 83 (2014).  Section 157 does not, however, enlarge the jurisdiction of federal courts; the provision merely allocates the jurisdiction created by 28 USC 1334.  *Matter of Holly's, Inc*, 172 BR 545, 556 (Bankr WD Mich, 1994).  Thus, for our purposes,

the focus must remain on whether 28 USC 1334 itself grants exclusive jurisdiction to the district court.

The city's claims are not causes of action created by title 11 or pursued as part of defendant's bankruptcy case. Rather, the city has asserted claims in a state civil lawsuit involving the terms and conditions of a mortgage, which fall under state contract law. Simply because the parties entered into the mortgage in accordance with the bankruptcy court's confirmed plan and order does not mean that any and all causes of action for breach of that contract must be pursued as part of defendant's now-closed bankruptcy case. Likewise, the city maintains that defendant has created a public nuisance and dangerous building, both of which are governed by state statute, not the bankruptcy code.

Defendant emphasizes that the city previously alleged a default of the confirmed plan and order before the bankruptcy judge, the judge exercised jurisdiction, and the district court affirmed that bankruptcy judge's decision. Although accurate, defendant's argument is incomplete—the bankruptcy judge did, indeed, take jurisdiction over the city's motion to reopen the bankruptcy case, but the judge did so under the original-but-not-exclusive provision of 28 USC 1334(b), *not* the original-and-exclusive provision of 28 USC 1334(a). Moreover, this case does not involve the same allegations or causes of action pursued before the bankruptcy judge. In fact, the bankruptcy judge expressly recognized that the city might have state-law claims outside of the confirmed plan and order.

Thus, this is not a case "under title 11" for purposes of 28 USC 1334(a). See *In re Wolverine*, 930 F2d at 1141; see also *In re Partners Ltd Partnership v Brown*, 199 BR 917, 919 (Bankr ED Mich, 1996) (holding that cases "under title 11" involve a cause of action "created by title 11"). Nor do any of the city's claims involve the construction of 11 USC § 327, so the grant of exclusive jurisdiction under 28 USC § 1334(e)(2) is not relevant here.

The district court's exclusive in rem jurisdiction under 28 USC § 1134(e)(1) raises a more interesting question. Under Michigan law, claims of breach of contract and nuisance are considered as claims in personam. *Specialties Distrib Co v Whitehead*, 313 Mich 696, 699-700; 21 NW2d 926 (1946) (contract); *Twp of Fraser v Haney*, 327 Mich App 1, 12-13; 932 NW2d 239 (2018), vacated 504 Mich 968 (2019) (nuisance); *Twp of Fraser v Haney (On Remand)*, 331 Mich App 96, 101; 951 NW2d 97 (2020) ("The matter is again reversed and remanded to the trial court for further proceedings consistent with this opinion and our original opinion.").[2] A party to the mortgage can breach that contract, but it makes little sense to speak of real property breaching a mortgage. Similarly, a party can develop or use real property in such a way as to create a public nuisance or dangerous building, meaning that the cause of action is really one in personam against the party who wrongfully developed or used the property, rather than against the real property itself. Thus, for these claims of the city, 28 USC 1334(e)(1) does not vest exclusive jurisdiction in the district court.

---

[2] Although not relevant here, certain claims of nuisance could be characterized as in rem or quasi in rem. See, e.g., *State ex rel Bailes v Guardian Realty Co*, 286 So 168, 170 (Ala, 1939).

But, under Michigan law, causes of action involving foreclosure and appointment of a receiver over real property are considered in rem, not in personam. *Lansing Drop Forge Co v American State Bank*, 273 Mich 124, 128; 262 NW2d 756 (1935) (receiver); *City of Detroit v 19675 Hasse*, 258 Mich App 438, 448-452; 671 NW2d 150 (2003) (foreclosure). Had a party pursued similar claims during the pendency of defendant's bankruptcy case, it appears that the district court would have had exclusive jurisdiction over the claims under 28 USC 1334(e)(1). It is unclear, however, how long (if at all) the district court retains exclusive jurisdiction over the res of the bankruptcy case and estate once the plan is confirmed and the case is closed.

On the one hand, "[s]ection 1334 does not expressly limit the bankruptcy court's jurisdiction following plan confirmation. Nevertheless, all courts that have addressed the question have ruled that once confirmation occurs, the bankruptcy court's jurisdiction shrinks." *In re General Media, Inc*, 335 BR 66, 73 (SD NY, 2005) (citation omitted).

> Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the protection of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens. [*Id.*, quoting *Pettibone Corp v Easley*, 935 F2d 120, 122 (CA 7, 1991); see also *Eastland*, 199 BR at 921.]

In fact, "[a] bankruptcy estate usually ceases to exist after a reorganization plan is confirmed." *In re Celebrity Home Entertainment, Inc*, 210 F3d 995, 998 (CA 9, 2000); see also 11 USC 1142 (effect of confirmation). And when the estate ceases to exist, exclusive jurisdiction does not appear to follow the property. See 9 Am Jur 2d, Bankruptcy, § 730, p 879 ("Jurisdiction does not follow the property; it lapses when property clears the estate.").

On the other hand, there are instances when a bankruptcy estate survives post-confirmation. 11 USC 1142; see also *Hillis Motors, Inc. v Hawaii Auto Dealers' Ass'n*, 997 F2d 581, 589-590 (CA 9, 1993). The bankruptcy judge in defendant's case retained jurisdiction over certain post-confirmation matters, and the judge had re-opened the case long enough to resolve the city's post-confirmation motion. But, as explained by the U.S. Court of Appeals for the First Circuit, "a bankruptcy court may not 'retain' jurisdiction it never had—i.e., over matters that do not fall within § 1334's statutory grant." *Gupta v Quincy Med Ctr*, 858 F3d 657, 663-664 (CA 1, 2017).

We are mindful that a court has an ongoing obligation "to question sua sponte its own jurisdiction over a person, the subject matter of an action, or the limits of the relief it may afford." *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 399; 651 NW2d 756 (2002). With that said, we are also mindful that neither the parties nor the circuit court raised or addressed the district court's exclusive jurisdiction over real property under 28 USC 1334(e)(1). Finally, we are mindful that, as a state court, we are not often called upon to interpret and apply bankruptcy law, a specialized and complex subset of federal law. Although a plain reading of the statutory language as well as the weight of judicial authority appear to favor the lapse of any exclusive jurisdiction over the property under 28 USC 1334(e)(1), we need not definitely resolve the matter today. As explained above, the circuit court is not divested by 28 USC 1334(a) or (e)(2) of subject-matter jurisdiction over at least some of the city's claims, and we will leave to future development whether the circuit court is restricted by 28 USC 1334(e)(1) from granting relief in the form of forfeiture or receivership.

To sum, we hold that the circuit court erred in concluding that, by application of 28 USC 1334, the circuit court did not have subject-matter jurisdiction over any of the city's claims. The federal district court does not have, by application of 28 USC 1334(a), exclusive jurisdiction over the city's claims, and it was reversible error for the circuit court to conclude otherwise. Moreover, the district court does not have exclusive jurisdiction under 28 USC 1334(e)(2) over any of the city's claims. We leave open the question on the effect, if any, of 28 USC 1334(e)(1) with respect to any of the city's claims or relief sought. Accordingly, we reverse the circuit court's grant of summary disposition to defendant under MCR 2.116(C)(4).

## D. SUMMARY DISPOSITION ON OTHER GROUNDS

Despite the fact that the circuit court concluded that it lacked subject-matter jurisdiction over any of the city's claims, it proceeded to reach the merits of the claims for declaratory relief and appointment of a receiver, dismissing them for lack of a genuine issue of material fact under MCR 2.116(C)(10). In this respect, the circuit court also erred.

The circuit court's ruling occurred at the very outset of the lawsuit, even though discovery had hardly commenced. "Generally, a motion for summary disposition under MCR 2.116(C)(10) is premature when discovery on a disputed issue has not been completed." *Colista v Thomas*, 241 Mich App 529, 537-538; 616 NW2d 249 (2000). To bolster its position opposing defendant's motion for summary disposition, the city offered to provide the circuit court with evidence to supports its allegations, but the circuit court declined: "Listen, I'm not—right now, I'm not addressing what the state of the building is or isn't. It—in the sense that I—I just want to know what jurisdiction I have 'cause it seems like the bankruptcy court either has addressed these issues or maybe still is. But you're telling me that's not the case— . . . ." But then the circuit court went beyond the jurisdictional question and addressed the merits of the city's claims in its subsequent opinion and order.

The current record is not sufficient for us to conclude that "there is no reasonable chance that further discovery will result in factual support for" one or more of the city's causes of action. *Id*. We reverse the circuit court's grant of summary disposition to defendant under MCR 2.116(C)(10) as premature on this record. If, once discovery has closed, there is a basis for a party to seek summary disposition under MCR 2.116(C)(10), then the party can move for such relief in accordance with the appropriate court rules.

Defendant also argues on appeal that the city's claims fail on the grounds of res judicata and collateral estoppel. For this alternate reason, defendant asks that we affirm the circuit court's grant of summary disposition under MCR 2.116(C)(7). The circuit court did not, however, address whether one or more of the city's claims were precluded by the doctrines of res judicata and collateral estoppel, and we will not do so for the first time on appeal. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 210; 920 NW2d 148 (2018).

Finally, as we previously noted, there is ongoing litigation between these parties in federal district court. The federal lawsuit was filed after the present lawsuit, and, as a consequence, the parties could not explore with the circuit court how that federal lawsuit impacts the present one, if at all. Nor was the matter of the courts' concurrent jurisdictions developed by the parties on appeal; in fact, neither party alerted this Court to the district court's recent order entered on September 28,

-13-

2021. In that order, the district court declined the city's request to abstain based, in part, on the circuit court's erroneous dismissal of the city's lawsuit on grounds of subject-matter jurisdiction and lack of a genuine issue of material fact. The district court explained that the question of abstention could be revisited if the circuit court's dismissal was reversed. Given our ruling today, we expect that the matter of which trial court is the best forum for resolving the parties' various claims will be explored further by the parties and trial courts.

## III. CONCLUSION

Our ruling on appeal is a narrow one. The circuit court erred when it concluded that the federal district court had exclusive jurisdiction under 28 USC 1334 over all of the city's claims. The circuit court likewise erred when it dismissed several of the city's claims under MCR 2.116(C)(10). For the reasons stated in this opinion, we reverse the circuit court's ruling granting defendant's motion for summary disposition in its entirety, and we remand to the circuit court for further proceedings consistent with this opinion. We decline to address the parties' additional arguments, which can be addressed by the circuit court in the first instance.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Michael J. Riordan
/s/ Jane E. Markey