# United States Court of Appeals
## For the First Circuit

No. 23-1705

IN RE: JUAN J. GUALLINI-INDIJ; RAQUEL MEDINA-RAMPOLLA,

Debtors, Appellants,

v.

BANCO POPULAR DE PUERTO RICO,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, District Judge]

Before

Barron, Chief Judge,
Thompson and Gelpí, Circuit Judges.

Javier Vilariño, with whom Vilariño & Associates LLC was on brief, for appellants.

Luis C. Marini-Biaggi, with whom Carolina Velaz-Rivero and Marini Pietrantoni Muñiz LLC were on brief, for appellee.

March 4, 2026

**THOMPSON**, **Circuit Judge**.  Over five years after filing an adversary proceeding in the United States Bankruptcy Court for the District of Puerto Rico, debtors and appellants Juan J. Guallini-Indij and Raquel Medina-Rampolla ("the Guallinis") continue to diligently pursue their day in court.  The Guallinis seek to hold appellee, Banco Popular de Puerto Rico ("Banco Popular") accountable for what they say was its predatory collection practices towards them in violation of Puerto Rico law and multiple federal laws.  Along their path to our court, the Guallinis have completed their bankruptcy plan with payment in full, have been told twice by the United States District Court for the District of Puerto Rico that it would not withdraw their adversary proceeding from the bankruptcy court, and have had the bankruptcy court close its doors to them for want of subject matter jurisdiction.  After a careful review of their claims, we think their appeal has merit, so we vacate and remand for reasons we explain.

**I**

**A**

We start with a recitation of the facts, while noting that the Guallinis and Banco Popular have a long and fraught history.[1]  To fully inform the gentle reader of this tumultuous

---

[1] We recite the facts using the 65 undisputed facts found by the bankruptcy court in its opinion.  See In re O'Donnell, 728

history -- which is necessary for our forthcoming resolution -- we will be recapping almost two decades' worth of dates and milestones.

Long before the Guallinis and Banco Popular got engaged in their highly-charged court squabble, their commercial relationship began. On November 29, 2005, the Guallinis and Banco Popular entered into a loan agreement and mortgage secured by the Guallinis' home in Dorado, Puerto Rico (referred to as "the home" from here on out). Ten years later, the Guallinis experienced financial hardship and, as a result, tendered their last mortgage payment around May 1, 2015. Later that month, the Guallinis sought the advice of Banco Popular's loss mitigation division and requested a modification of their loan agreement attempting to avoid foreclosure on the home. Banco Popular denied the Guallinis' request to modify the loan agreement but informed the Guallinis that it would entertain a "short sale" of the home (bank jargon for offering to buy a home for less than the amount left on the owner's mortgage and forgiving the rest).

In November 2015, Banco Popular initiated foreclosure proceedings in the Court of First Instance of Bayamón ("state court") seeking the collection of monies under the Guallinis' loan agreement and to foreclose on the home. Circling the drain, the

F.3d 41, 43 n.1 (1st Cir. 2013).

Guallinis made their first short sale offer to Banco Popular in early January 2016. Before rejecting the first short sale offer, Banco Popular moved for entry of default in the foreclosure proceedings and the state court entered judgment in the bank's favor soon after.[2] These proceedings left the Guallinis with a choice -- put up $185,527.73 in cash (plus interest) to satisfy the judgment, or face foreclosure on the home.

With its judgment in hand, Banco Popular rejected the first, second, and third short sale offers from the Guallinis. Still not dissuaded, the Guallinis made a final short sale pitch, and on October 25, 2016, Banco Popular accepted this offer under the condition that the short sale close before the public auction of the home scheduled for November 2, 2016. The Guallinis and their realtor got to work but, despite their efforts, the short sale did not close in time and Banco Popular foreclosed on November 2, 2016.

The home was auctioned off (to the same purchaser the Guallinis provided in their final short sale offer) but Banco Popular claimed there was an outstanding balance left on the Guallinis' tab. To cover this amount, the bank procured an order from the state court to confiscate and garnish $114,774.72 from the Guallinis. This straw broke the camel's back, and the

---

[2] The Guallinis did not appeal this judgment.

Guallinis filed a voluntary petition for Chapter 13 bankruptcy on December 27, 2017.

**B**

Before offering the details of the Guallinis' bankruptcy proceedings, we briefly digress into the byzantine world of bankruptcy law to prepare the reader for the upcoming series of events.

Bankruptcy is recognized in the founding document of our Nation. See U.S. Const. art. I, § 8, cl. 4. Per the Constitution, Congress possesses the authority to establish "uniform Laws on the subject of Bankruptcies throughout the United States." Id. And we start here to say, bankruptcy is nothing new and its legal framework carries its own vintage within our legal traditions.

Bankruptcy itself is a legal process for individuals and businesses who can no longer repay their debts. It can provide relief from financial hardship by allowing individuals a path to either repaying some of their outstanding debts or having those debts completely forgiven. See United States v. Valdés-Ayala, 900 F.3d 20, 24-25 (1st Cir. 2018). Chapter 13 of the bankruptcy code (the one invoked by the Guallinis) allows individuals who have a regular source of income to file a voluntary petition to pay off their debts through a plan of reorganization and repayment (a

"Chapter 13 plan") which is reviewed and approved by a bankruptcy court.[3]  See id.; see also 11 U.S.C. §§ 1301-1330.

Once a Chapter 13 plan is in place, an appointed Chapter 13 trustee ensures that the debtor makes the agreed-upon payments as set forth in the plan.  See 11 U.S.C. § 1302.  When the Chapter 13 plan is satisfied (meaning all debts to be repaid under the plan have been paid), the bankruptcy court may grant the debtors a discharge (unless, of course, one of the exceptions in the Bankruptcy Code applies).  See id. § 1328.  This discharge order grants debtors their fresh start by relieving them from all pre-petition debt and permanently enjoining creditors from collecting discharged debts.  See Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 444 (1st Cir. 2000).

As a bankruptcy case proceeds, but before a discharge is granted, parties in interest (including debtors or creditors) may file an adversary proceeding in the bankruptcy court.  See Fed. R. Bankr. P. 7001.  In essence, "[a]n adversary proceeding is a subsidiary lawsuit within the larger framework of a bankruptcy case."  Fin. Oversight & Mgmt. Bd. for P.R. v. Cooperativa de Ahorro y Crédito Abraham Rosa, 54 F.4th 20, 26 n.1 (1st Cir. 2022) (quoting In re Fin. Oversight & Mgmt. Bd. for P.R., 872 F.3d 57,

---

[3] Once an individual files their bankruptcy petition, they take on the title of "debtor" in the subsequent proceedings, and those to whom they owe outstanding debts become the "creditors."

63 (1st Cir. 2017)). The goals of an adversary proceeding vary, but typically seek recovery of money or property, a discharge determination, or to subordinate certain claims.

In some instances (this case being one of them), a party may file a motion for withdrawal of the reference and attempt to transfer their adversary proceeding from the bankruptcy court to the district court. See Reyes-Colón v. Banco Popular de P.R., 110 F.4th 54, 68-69 (1st Cir. 2024). It is the district court that decides whether to grant a motion for withdrawal. See 28 U.S.C. § 157(d). If the district court grants the motion, the parties continue to litigate the merits of their adversarial proceeding from the confines of the district court, and the bankruptcy court moves on to the next case on its busy docket. See id.

With our reader equipped with a baseline understanding of the relationship between Chapter 13 bankruptcy and an adversary proceeding, we can get back to the details of what unfolded for the Guallinis below.

C

The bankruptcy court confirmed the Guallinis' Chapter 13 plan on September 5, 2018. The approved plan explicitly signaled to the court that the Guallinis intended to pursue an adversary proceeding against Banco Popular as it indicated that any proceeds from their claims against the bank would be used to satisfy their debts. Then, on February 4, 2019, more than a year after filing

for bankruptcy, the Guallinis filed an adversary proceeding against Banco Popular that serves as the catalyst for the present appeal.

The Guallinis' adversarial complaint sought avoidance or subordination of Banco Popular's claims,[4] as well as actual, emotional, and punitive damages under Puerto Rico and federal laws.[5] Banco Popular did not file an answer immediately. Rather, without submitting to the jurisdiction of the bankruptcy court, Banco Popular filed a motion to dismiss the adversarial complaint premised on pleading deficiencies and statute of limitations defenses. The bankruptcy court took the motion under advisement and, months later, denied the motion. So, with the adversary proceeding set to move forward, Banco Popular filed an answer to the complaint on November 27, 2019.

An initial scheduling conference was held in the bankruptcy court on December 4, 2019, giving the parties a few months to conclude discovery and inform the court how they intended

---

[4] An avoidance action allows for the cancellation of an improper conveyance or recovery of the value of improperly conveyed property. In re Vázquez Laboy, 647 F.3d 367, 375 (1st Cir. 2011). Equitable subordination, on the other hand, allows the bankruptcy court to rearrange the priorities of creditors' claims so that a creditor who may have committed some wrongdoing has an inferior claim to other creditors. In re 604 Columbus Ave. Realty Tr., 968 F.2d 1332, 1353 (1st Cir. 1992).

[5] Due to this case's procedural posture and the claims presented on appeal, it is not necessary to detail these adversary claims as we will not be addressing their merits.

to litigate the adversary proceeding. But, after a few joint requests for extensions, delays due to the COVID-19 pandemic,[6] and several rounds of briefing over the Guallinis' request for leave to amend their complaint which Banco Popular repeatedly opposed, 2021 came around and the proceedings had not proceeded very far. And during this time, one of the Guallinis' parents passed away leaving them an inheritance sufficient to satisfy their Chapter 13 plan in full.

The next event of importance (and we've tried our best to limit our purview of the case to only such events) occurred on May 11, 2021, when the Guallinis filed a separate complaint in the United States District Court for the District of Puerto Rico. This new complaint alleged similar issues arising from the same operative facts as those in the ongoing adversary proceeding and demanded a jury trial to resolve these claims.

Soon after filing their federal lawsuit, the Guallinis filed a motion for withdrawal of reference in the bankruptcy court. (To remind the reader, motions for withdrawal are the vehicles parties can use to move their adversary proceedings from bankruptcy

---

[6] As we've previously recognized, "the COVID-19 virus vexed even the best-laid plans during this period in world history." United States v. Huertas, 148 F.4th 1, 16 (1st Cir. 2025) (detailing the continuation of court proceedings in the District of Puerto Rico). Needless to say, the United States Bankruptcy Court for the District of Puerto Rico was not immune to such delays. See U.S. Bankr. Ct. D.P.R., General Order 20-03: Court Closing (Mar. 16, 2020).

court to district court.)  In their motion, the Guallinis argued their adversary complaint was "overwhelmed by the required evaluation of non-bankruptcy law," and that they had a "fundamental right to a jury trial in the District Court," thus warranting withdrawal.[7]  The bankruptcy court referred the case to the district court on May 27, 2021, with express notice that "the administration of the [bankruptcy] case [did] not appear to be affected by the motion for withdrawal of reference in the adversary proceeding."  Banco Popular vehemently opposed the motion, alleging forum shopping by the Guallinis and claiming that (1) the causes of action in the adversary proceeding were "core bankruptcy proceedings" and that (2) "[p]rinciples of judicial economy, among others, weigh heavily in favor of having [the bankruptcy court] hear and decide the Adversary Proceeding."

While the motion for withdrawal was pending, Banco Popular moved to dismiss the federal lawsuit accusing the Guallinis again of forum shopping and asserting that the same causes of action were already being adjudicated in the bankruptcy court. But before the district court could resolve either the Guallinis' first motion for withdrawal or the motion to dismiss the separate

_____

[7] We note -- as the district court did when reviewing this motion for withdrawal -- that the Guallinis raised their jury trial argument in a reply brief before the district court.  We express no view as to whether the Guallinis properly developed this claim.

- 10 -

federal lawsuit, Banco Popular filed a motion for summary judgment back in the bankruptcy court on August 25, 2021. And, just five days after Banco Popular's summary judgment filing, the bankruptcy court granted the Guallinis a discharge under their Chapter 13 plan, their debts having been satisfied. We'll return to Banco Popular's summary judgment motion shortly but, to rehash, at this juncture the parties had a motion to dismiss and a motion for withdrawal pending in the district court and a summary judgment motion in the adversary proceeding filed in the bankruptcy court after the Guallinis had been granted a discharge.

Months later, the district court first addressed the Guallinis' motion for withdrawal and dismissed it without prejudice. The district court reasoned that, because two years had elapsed from when the Guallinis filed their adversary proceeding and when they moved for withdrawal, the motion was untimely. Regarding the Guallinis' claim for a jury trial, the district court found their claim likely waived for lack of development and, in any case, "premature" considering that "it serves the interests of judicial economy and efficiency to keep an action in Bankruptcy Court for the resolution of pre-trial, managerial matters, even if the action will ultimately be transferred to a district court for trial." In re Enron Corp., 295 B.R. 21, 28 (S.D.N.Y. 2003). So, from the district court's perspective, the adversary proceeding belonged back in bankruptcy

- 11 -

court and the Guallinis could "again seek withdrawal" after the bankruptcy court completed all pre-trial proceedings.

After denying the motion for withdrawal, the district court later granted Banco Popular's motion to dismiss the separate federal lawsuit. In its order, the district court stated that motions for summary judgment were pending in the parallel adversary proceeding and that the Guallinis' motion for withdrawal had already been denied. Therefore, "principles of comity and sound judicial administration" precluded the Guallinis from litigating parallel issues "simultaneously in bankruptcy and district courts, especially when a withdrawal of reference has been denied." The Guallinis' lawsuit against Banco Popular was summarily dismissed without prejudice.

For the time being, circa early 2022, proceedings in the district court concluded and the adversary proceeding returned to bankruptcy court to settle Banco Popular's motion for summary judgment. The Guallinis had filed an opposition to that summary judgment motion and filed a cross-motion for summary judgment of their own after their motion for withdrawal had been denied, but before the court dismissed their federal lawsuit. When it came time to resolve these motions, the bankruptcy court found 65 uncontested material facts but declined to propose any conclusions of law applying those facts. Instead, the bankruptcy court sua sponte dismissed the adversary proceeding without prejudice. In

doing so, the bankruptcy court decided that it lacked subject matter jurisdiction to hear the adversary proceeding after the Guallinis had been granted a discharge.

Aggrieved that their claims remained unresolved, the Guallinis moved for reconsideration in the bankruptcy court. Their motion for reconsideration exudes frustration over the procedural gambit that the Guallinis had fallen into: (1) the Guallinis filed their motion for withdrawal knowing the bankruptcy court would soon grant them a discharge; (2) the district court denied their motion for withdrawal so that the bankruptcy court could conclude pre-trial proceedings; and (3) the bankruptcy court declined to conclude pre-trial proceedings for its lack of jurisdiction while implicitly disagreeing with the district court's decision to deny the motion for withdrawal. Banco Popular opposed the motion for reconsideration, arguing that this was a clear-cut matter over which the bankruptcy court no longer had subject matter jurisdiction.

The bankruptcy court took the motion under advisement and, in the interim, the Guallinis filed their second motion for withdrawal seeking (once again) to have their adversary proceeding heard in the district court. Shortly after the second motion for withdrawal was filed, the bankruptcy court denied the motion for reconsideration and shut the doors of the courthouse. The Guallinis timely appealed the bankruptcy court's decision to the

district court and moved to consolidate their appeal with their pending motion for withdrawal.[8]  The motion to consolidate was granted, bringing all outstanding matters before the district court.

Here we arrive at the penultimate stop on the tumultuous travel of this case where the district court ultimately affirmed the bankruptcy court's decision and denied the Guallinis' second motion for withdrawal.  Before its discussion of the merits, the court "recognize[d] and commend[ed] [the Guallinis'] diligent efforts to prosecute their case."  However, starting with the appeal, the court faulted the Guallinis for not raising any argument "standing for the proposition that the Bankruptcy Court erred in declaring itself without subject-matter jurisdiction." (A view we do not share and will address momentarily.)  To boot, the court found that the Guallinis were "pleased with that conclusion," and that they agreed "the plan completion triggered an absence of jurisdiction."  So, in the absence of any claimed error related to the bankruptcy court's sole reason for dismissing the adversary proceeding, the district court affirmed.

---

[8] In this circuit, bankruptcy appeals proceed through a two-tiered system. In re Curran, 855 F.3d 19, 24 (1st Cir. 2017). In tier one, a party can appeal a decision of the bankruptcy court to either the district court or to the Bankruptcy Appellate Panel for the First Circuit. Id. In tier two, our court of appeals offers a second layer of appellate review, regardless of where the party initially appealed in tier one. Id.

- 14 -

The district court then shifted its focus to the Guallinis' second motion for withdrawal which it swiftly denied. Its analysis hinged on what it deemed "a rhetorical question," how could a motion for withdrawal be timely in 2023 when it had already been found untimely in 2021? On that basis, the district court deemed the second motion for withdrawal untimely and denied it. Notably, the court's decision did not comment on nor discuss the Guallinis' request for a jury trial. The Guallinis timely appealed the district court's decision on both fronts (the affirmance of the bankruptcy court's decision and the denial of the motion for withdrawal) thus concluding the travel of the case. We'll pick it up from there.

## II

As we previously noted in our presentation of the procedural history, "[t]he bankruptcy code channels bankruptcy appeals through a two-tiered framework." In re Shove, 83 F.4th 102, 108 (1st Cir. 2023). When reviewing appeals from this framework, "[w]e afford no particular deference to decisions of the first-tier appellate tribunal . . . and focus instead on the bankruptcy court's decision." Id. (quoting In re Curran, 855 F.3d 19, 24 (1st Cir. 2017)). And, when holding the bankruptcy court's decision up to appellate scrutiny, we review findings of fact for clear error and conclusions of law de novo. Id. A court's

- 15 -

determination of its own jurisdiction is a question of law subject to de novo review. Reyes-Colón, 110 F.4th at 63.

To preserve an argument for appellate review of a bankruptcy court's decision, it is well-settled that a party must generally raise the argument to the bankruptcy court. See In re Carp, 340 F.3d 15, 25-26 (1st Cir. 2003). Our circuit has not addressed, however, whether a party must also raise that argument in their first-tier appeal (here, to the district court) to preserve the argument for appellate review before our court. See In re Reyes-Colon, 922 F.3d 13, 18-19 (1st Cir. 2019) (noting that "[a]t least two circuits have held that the losing party in the bankruptcy court cannot raise on appeal to the circuit court arguments not presented to the district court on intermediate review," but deeming the circumstances distinguishable and not reaching the issue).

Of equal import for this appeal is the lens with which we review a district court's decision to deny a motion for withdrawal. We have recently determined such decisions are reviewed for an abuse of discretion, Reyes-Colón, 110 F.4th at 68, meaning legal rulings are reviewed de novo, factual findings for clear error, and "the degree of deference afforded to issues of law application waxes or wanes depending on the particular circumstances," T-Mobile N.E. LLC v. Town of Barnstable, 969 F.3d 33, 38 (1st Cir. 2020).

Due to its relation to the scope of our review, we pause to repeat a common thread between the Guallinis' arguments. The Guallinis seek (and have been for several years) their day in court. In their motion for reconsideration before the bankruptcy court, the Guallinis argued that the bankruptcy court should have concluded all pre-trial proceedings, and its subject matter jurisdiction determination could "be construed as a manifest error of law that would lead to a manifest injustice." Then, in their appeal to the district court, the Guallinis requested the court "revoke" the bankruptcy court's determination, adjudicate the pending motions for summary judgment, or, "[i]n the alternative," send the case back to the bankruptcy court to finalize pre-trial proceedings. And now, in their second appeal, this one to our court, the Guallinis assert that the district court misunderstood their arguments and continue to request that their case be remanded back to the bankruptcy court (or be withdrawn to the district court).

By repeatedly requesting that the bankruptcy court finalize pre-trial proceedings, the Guallinis necessarily (but not artfully) made a jurisdictional argument. That is because, as the Guallinis point out on appeal, bankruptcy courts have statutory subject matter jurisdiction over bankruptcy matters pursuant to 28 U.S.C. § 157, and that statute generally requires bankruptcy courts to issue "proposed findings of fact and conclusions of law

to the district court."[9]  Thus, by asking the bankruptcy court to "conclude pre-trial proceedings" and consider the parties' legal arguments in light of the uncontested material facts, the Guallinis necessarily invoked § 157, which has been understood to provide a jurisdictional basis for "related to" matters even post discharge. See, e.g., In re Smith, 866 F.2d 576, 579-80 & n.4 (3d Cir. 1989) (concluding that, pursuant to § 157, the bankruptcy court "properly retained jurisdiction" over related claims post discharge).

Even if we were of the view that the Guallinis had not clearly presented this issue to the bankruptcy court, we could still address it because the bankruptcy court squarely addressed this issue in its opinion.  See Holsum de P.R., Inc. v. ITW Food Equip. Grp., 116 F.4th 59, 66 (1st Cir. 2024) ("Appellate courts may . . . address an issue not presented to the lower court if the lower court nevertheless addressed the issue."); see also In re

---

[9] As the Guallinis quote in their briefing, the text of 28 U.S.C. § 157(c)(1) states:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.  In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

SPM Mfg. Corp., 984 F.2d 1305, 1316 (1st Cir. 1993) (reviewing the "findings and rulings" of the bankruptcy court to find a litigant's appellate claim waived for failing to raise it in bankruptcy court). After the bankruptcy court discussed the issue of its own subject matter jurisdiction at length, Banco Popular took the opportunity to weigh in when opposing the Guallinis' motion for reconsideration to the bankruptcy court. It is true that, in addressing the Guallinis' motion for reconsideration, the bankruptcy court did not clearly explain whether it was rejecting that motion on the ground that it still believed that it categorically lacked post-discharge jurisdiction over "related to" proceedings, or whether it thought the Guallinis had done too little to challenge its prior determination that it lacked jurisdiction on that basis.

But Banco Popular weighed in on this jurisdictional question again when opposing the Guallinis' first appeal to the district court. Though the district court and Banco Popular share the opinion that the Guallinis failed to challenge the bankruptcy court's jurisdiction determination in the first-tier appeal, we disagree and find that the Guallinis did enough to preserve this argument for our second-tier appellate review. As explained above, by asking the court to "direct the [b]ankruptcy [c]ourt to finalize the pre-trial proceedings," the Guallinis necessarily invoked § 157 as a basis for the bankruptcy court's jurisdiction. The

district court thus had an opportunity to address this jurisdictional issue, at least to the extent of considering the Guallinis' alternative request that their case be sent back to the bankruptcy court for pre-trial proceedings, and despite its position regarding the shortcomings of the Guallinis' briefing. Banco Popular then submitted its position on this jurisdictional issue for a third time in opposing the Guallinis' appeal to our court. Therefore, our typical cautionary justifications for finding waiver where a party failed to raise an argument below are clearly absent here. See Holsum de P.R., Inc., 116 F.4th at 66 ("This waiver rule is intended to ensure that opposing parties and trial judges have the opportunity to address and to decide issues in the first instance before an appellate court steps in.").

Candidly, the Guallinis' briefing on appeal (and in proceedings prior) is not always a beacon of clarity. However, before our court, the Guallinis discuss the bankruptcy court's reasoning for deciding that it lacked subject matter jurisdiction, insist that the circumstances of their adversary proceeding did not "automatically deprive the bankruptcy court of its consideration on the merits," and request that their adversary proceeding be returned to the bankruptcy court for the completion of pre-trial proceedings pursuant to § 157. Thus, we find their appellate arguments expressed with enough perspicuity to allow us to see the basis of their claims, thereby avoiding waiver and

allowing us to enter judgment accordingly.  See In re Plaza Resort at Palmas, Inc., 741 F.3d 269, 282 (1st Cir. 2014) (Selya, J., dissenting) (explaining that our waiver rule does not require "arguments be precise to the point of pedantry" and "[w]here, as here, an issue has been squarely advanced, an appellate court can -- and in the interests of justice should -- go beyond the reasons articulated in the parties' briefs to reach a result supported by law").  That said, we continue on and consider the Guallinis' arguments.

**A**

We first address the Guallinis' appeal from the bankruptcy court's dismissal for lack of subject matter jurisdiction.  (And, to remind, our focus is on the bankruptcy court's decision, not the district court's view on this jurisdictional matter.)  The jurisdiction of the bankruptcy court (like all federal courts) is grounded in, and limited by, statute. Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995).  The statute conferring jurisdiction to the bankruptcy court is a familiar one; with its two main sects distinguished as "cases under title 11" and "all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b); see Gupta v. Quincy Med. Ctr., 858 F.3d 657, 661 (1st Cir. 2017).

An accompanying provision, § 157(c), authorizes a bankruptcy court to hear "a proceeding that is not a core

proceeding but that is otherwise related to a case under title 11."[10] And "[i]n such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge" after considering those findings and reviewing de novo any objections from the parties. 28 U.S.C. § 157(c)(1). Or, with consent from the parties, bankruptcy courts may hear and "enter appropriate orders and judgments" in related to proceedings. Id. § 157(c)(2). Indeed, the idea behind this "broad jurisdictional grant" is so that "the bankruptcy courts [can] 'deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" Gupta, 858 F.3d at 662 (quoting Celotex, 514 U.S. at 308).

In general, "related to" adversary proceedings will be dismissed following the termination of the underlying bankruptcy proceedings. This is so because a bankruptcy court's retention of jurisdiction over a related proceeding depends on the proceeding's nexus to the underlying bankruptcy case. See In re Porges, 44 F.3d 159, 162 (2d Cir. 1995) (explaining that the "general rule

_____

[10] Beyond the two sects just identified, bankruptcy matters are further divided into two categories: "core" and "non-core" proceedings. Cases that arise under or in title 11 are "core" proceedings, while proceedings that are "related to" an underlying bankruptcy case are considered "non-core" proceedings. See Stern v. Marshall, 564 U.S. 462, 474-77 (2011) (citing 1 Collier on Bankruptcy ¶ 3.02[2], p. 3-26, n.5 (16th ed. 2010) ("The terms 'non-core' and 'related' are synonymous.")).

favors dismissal because a bankruptcy court's jurisdiction over such related proceedings depends on the proceedings' nexus to the underlying bankruptcy case"). But this rule is not a command set in stone, and nothing in the Bankruptcy Code requires the automatic dismissal of a related adversary proceeding following the termination of an underlying bankruptcy case. Id.; see also In re Smith, 866 F.2d at 580 (finding a bankruptcy court appropriately retained its jurisdiction over a related adversary proceeding following a discharge); cf. Reyes-Colón, 110 F.4th at 64 ("Post-dismissal jurisdiction depends on the basis for jurisdiction over the proceeding and the specific circumstances and nature of the proceeding itself." (emphasis added)).

Now, we do not fault the bankruptcy court for assessing its jurisdiction post discharge. An objection to a federal court's subject matter jurisdiction may be raised by any party, or by a court's own initiative, at any stage of litigation. Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988) ("It is too elementary to warrant citation of authority that a court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting." (irony added)). But it does not follow from the obligation to inquire into jurisdiction that a court must then find itself automatically divested of its jurisdiction. For example, a federal court can

- 23 -

decide to retain jurisdiction over pendent state law claims after dismissing all federal claims if "doing so would serve the interests of fairness, judicial economy, convenience, and comity." Zell v. Ricci, 957 F.3d 1, 15 (1st Cir. 2020) (citation modified). So, to preview our forthcoming conclusion, the error here lies not with inquiring into subject matter jurisdiction but with finding that the court's previously vested jurisdiction had automatically dissipated following the Guallinis' discharge. See In re Porges, 44 F.3d at 162.

With these jurisdictional principles in mind, we return to the matter at hand. The Guallinis agree with the bankruptcy court that their adversary proceeding fell into the "related to" bucket of bankruptcy jurisdiction. However, they argue that the completion of their Chapter 13 plan did not "automatically deprive the bankruptcy court of its consideration on the merits" such that the bankruptcy court could have "proposed findings and conclusions" to be further reviewed (de novo) by the district court. See 28 U.S.C. § 157(c)(1). We agree.

Recall that the Guallinis filed their adversary proceeding with the bankruptcy court on February 4, 2019, after implicating their causes of action into the Chapter 13 plan. At that point, the bankruptcy court certainly had jurisdiction over the adversary proceeding because the Guallinis' claims "related to" their bankruptcy proceedings and "potentially ha[d] some

effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise ha[d] an impact upon the handling and administration of the bankrupt estate." Gupta, 858 F.3d at 663 (citation modified).[11] In other words, any proceeds that may have resulted from the adversary proceeding would have become property of the estate and available for distribution to creditors. See Celotex, 514 U.S. at 308 n.6. Exercising its jurisdiction, the bankruptcy court thereby oversaw pre-trial matters and denied Banco Popular's motion to dismiss the adversary proceeding while administering the bankruptcy plan before ultimately granting the Guallinis a discharge.

Because it is undisputed the bankruptcy court had subject matter jurisdiction over the adversary proceeding when the Guallinis filed it, we hold that the court erred as a matter of law in sua sponte dismissing the Guallinis' adversary proceeding when it assumed that it automatically lost its jurisdiction because of the discharge. Recently, in assessing the jurisdiction of a bankruptcy court post discharge, we (like other courts) specifically declined to adopt a blanket rule that jurisdiction automatically terminates following the dismissal of an underlying

_____

[11] We add (as the Guallinis point out in their briefing) that Banco Popular opposed the first motion for withdrawal, in part, because by its lights the bankruptcy court had jurisdiction over the proceeding and Banco Popular had already filed its motion for summary judgment in the bankruptcy court pursuant to that jurisdiction.

bankruptcy petition. Reyes-Colón, 110 F.4th at 64. Instead, we concluded that the question of a bankruptcy court's post-dismissal (or discharge) jurisdiction is "a case- and fact-specific inquiry." Id. What the bankruptcy court should have done (but did not) was make a case-specific inquiry as to whether it had any basis for retaining jurisdiction over the adversary proceeding post discharge. See id.; In re Porges, 44 F.3d at 163. Should the proceeding ultimately return to the bankruptcy court on remand,[12] the court will then be in a position to conduct this inquiry in light of its own views and the parties' presentations of their arguments.

As guidance for that analysis, we endorse the approach taken by other circuits that the case-specific inquiry should be gauged by several familiar factors: judicial economy, convenience to the parties, fairness, and comity. In re Porges, 44 F.3d at 163 (finding a bankruptcy court properly exercised its jurisdiction over an adversary proceeding after dismissing the underlying bankruptcy case because "[t]o have declined jurisdiction at that stage would have served no useful purpose, and would have wasted the resources already invested by the parties

---

[12] After all, even though we vacate the bankruptcy court's determination that it lacked subject matter jurisdiction over that proceeding, if the district court grants the Guallinis' motion for withdrawal on remand, the proceeding will remain with the district court rather than returning to the bankruptcy court.

and the court"); cf. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) (listing these four factors for courts to balance under the pendent jurisdiction doctrine); Marquis v. FDIC, 965 F.2d 1148, 1154 (1st Cir. 1992) ("It is difficult to conceive of anything less efficient than dismissing a suit that has been, say, two years in process, only to have an identical suit started afresh some six months later."). Though we decline to decide how those factors should be applied to the Guallinis' adversary proceeding, in our view, between the bankruptcy court's still-existent jurisdiction and the particular circumstances of this adversary proceeding, the bankruptcy court was primed to exercise its jurisdiction and accompany its 65 findings of fact with conclusions of law for the district court's review.

We hasten to add that our resolution ameliorates the irreconcilable tension between the district court's denial of the Guallinis' first motion for withdrawal and the bankruptcy court's decision -- which ultimately prevented the adversary proceeding from advancing in the normal course. The district court denied the Guallinis' first motion for withdrawal on timeliness grounds. While the bankruptcy court later commented that the district court's opinion and order did not address the Guallinis' "completion of plan payments and the . . . bankruptcy discharge" a closer inspection of the district court's opinion reveals that it did. The district court reasoned that the "fact that one form

of relief that [the Guallinis] requested may <u>now be moot</u> does not restart their withdrawal clock." (Emphasis added.) The district court recognized the already existent discharge and nevertheless referred the adversary proceeding back to the bankruptcy court because the discharge possibly implicated issues of mootness, rather than subject matter jurisdiction. We cannot read (as it appears the bankruptcy court did) a glaring oversight into the district court's decision that it would refer a matter to a court that lacked any authority to issue a decision. Rather, we see the district court as understanding the typical practice for related adversary proceedings filed in bankruptcy court: the bankruptcy court would handle pre-trial proceedings and propose findings that the district court could later review before entering final judgment.[13] <u>See</u> <u>Stern</u> v. <u>Marshall</u>, 564 U.S. 462, 475 (2011) (explaining the process of "related to" proceedings); <u>cf.</u> <u>In re Vestavia Hills, Ltd.</u>, 630 B.R. 816, 850 (S.D. Cal. 2021) ("[S]ending every proceeding that required passing consideration of non-bankruptcy law back to the district court would eviscerate much of the work of the bankruptcy courts." (citation modified)).

---

[13] Or, based on the consent of the parties, the bankruptcy court could have entered judgment subject to the district court's first-tier appellate review. 28 U.S.C. § 157(c)(2).

- 28 -

**B**

The Guallinis also appeal the district court's denial of their second motion for withdrawal. So, that is where we train our focus next. In short order, the Guallinis claim that the district court abused its discretion by "relying on inapplicable facts argued on the first attempt to Withdraw the Reference," failing to consider "that the timing of the second request was proximate to the appealed opinion and order," and by "not taking into consideration [the Guallinis'] right to a jury trial." Banco Popular disagrees in full, arguing that the district court did not abuse its discretion in denying "the clearly belated request for withdrawal of reference." Again, we find the Guallinis' claims meritorious.

District courts have "original but not exclusive jurisdiction" over "related to" adversary proceedings. 28 U.S.C. § 1334(b). Accordingly, district courts are permitted to refer such proceedings to bankruptcy courts. See Gupta, 858 F.3d at 662 (citing 28 U.S.C. § 157). A district court may later withdraw its reference of a particular case on its own initiative or by "timely motion of any party, for cause shown." 28 U.S.C. § 157(d). But district courts "have been cautious in applying" this authority as the statute makes clear "that Congress intended to have bankruptcy proceedings adjudicated in the bankruptcy court unless withdrawal [is] essential to preserve a higher interest." United States v.

<u>Kaplan</u>, 146 B.R. 500, 502-03 (D. Mass. 1992). Furthermore, motions for withdrawal of reference do not address any substantive issues but, rather, address which court will decide those issues. <u>See Reyes-Colón</u>, 110 F.4th at 69. Motions for withdrawal can be either mandatory or permissive, <u>see</u> <u>id.</u> & n.19, but motions of either persuasion must be timely, <u>see</u> 28 U.S.C. § 157(d).

Notably, the relevant statute is silent on what it means for a motion for withdrawal to be "timely." <u>See</u> <u>id.</u> We have previously read this term (in the context of permissive withdrawals) to mean "a motion for withdraw is timely if it was made as promptly as possible in light of the developments in the bankruptcy proceeding, or if filed at the first reasonable opportunity." <u>Reyes-Colón</u>, 110 F.4th at 69 (citation modified). Thus, timeliness determinations can vary and "must be measured by the stage of the proceedings in the bankruptcy court." <u>Id.</u> at 70 (quoting <u>Kaplan</u>, 146 B.R. at 504); <u>see also</u> <u>In re Baldwin-United Corp.</u>, 57 B.R. 751, 753 (S.D. Ohio 1985) ("At the very least, timeliness would require that action be taken without undue delay. In determining whether something is timely, it must be evaluated in the context of the specific situation."); <u>In re Vestavia Hills, Ltd.</u>, 630 B.R. at 851 (stating that once the grounds for withdrawal become apparent, "a party has a plain duty to act diligently -- or else, to forever hold his peace" (citation omitted)).

Here, the district court correctly began its inquiry into the Guallinis' second motion for withdrawal with the "threshold determination" of timeliness. Reyes-Colón, 110 F.4th at 69. In doing so, the district court posed what it deemed "a rhetorical question: if the withdrawal of the reference was two-years late in 2021, how is it no [sic] also untimely in 2023?" It also concluded that there was "no discernible difference in the status of the Adversary Proceeding that would allow this Court to disregard the ruling of a sister District Court" and, therefore, the second motion must be untimely. Because, in reaching this conclusion, the district court did not make clear whether it relied upon the proper factors, we vacate its decision. Here's why.

A court abuses its discretion "if it ignores a material factor deserving of significant weight, relies upon an improper factor or makes a serious mistake in weighing proper factors." In re Fin. Oversight & Mgmt. Bd. for P.R., 939 F.3d 340, 346 (1st Cir. 2019) (citation modified). As we just explained, the district court relied on the un-timeliness of the Guallinis' first motion for withdrawal to conclude their second motion must also be untimely. In doing so, the court referenced "the status of the Adversary Proceeding," but its opinion is ambiguous as to whether it considered the changes in that status following the rejection of the Guallinis' first motion for withdrawal. Insofar as the court relied only on the timing of the first motion in rejecting

the second, it cites no authority (and we can find none) for the proposition that once a party's motion for withdrawal is deemed untimely, that party is forever barred from filing a timely motion in the future. See In re Adelphi Inst., Inc., 112 B.R. 534, 539 (S.D.N.Y. 1990) (denying a motion for withdrawal of reference "without prejudice to its renewal in the event the claims of the Trustee occasion a jury trial").[14]  And our caselaw provides a different metric for measuring timeliness: "[t]he timeliness of a motion to withdraw must be measured by the stage of the proceedings in the bankruptcy court." Reyes-Colón, 110 F.4th at 70 (citation modified); see also In re Vestavia Hills, Ltd., 630 B.R. at 852 (supporting its conclusion that a motion for withdrawal was timely because, at that stage of proceedings, withdrawal would not "impair judicial economy").  When presented with the Guallinis' second motion for withdrawal, the district court should have considered the present status of proceedings in the bankruptcy court (i.e., that the pre-trial proceedings prolongedly shepherded by the bankruptcy court had yet to conclude).  Because it is not clear from the district court's opinion whether it improperly relied on the status of the proceedings at the time of the first motion without considering that the first motion was denied without

_____

[14] Indeed, the Guallinis' first motion for withdrawal was denied without prejudice meaning that the district court must have contemplated the likelihood of a second motion down the road given the nature of the causes of action to be resolved.

prejudice, we vacate its decision and remand for further proceedings consistent with this opinion.

In doing so, we expect the district court to address the Guallinis' request for a jury trial. The Guallinis' second motion for withdrawal expressly invoked their Seventh Amendment right to a jury trial, yet the district court's focus elsewhere omitted analysis of this request. As expressed beyond our court, a party's request for a jury trial may justify its removal to a district court. See In re Adelphi Inst., Inc., 112 B.R. at 538 ("The appropriateness of removal of the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial-ready."); Desmond v. Ng, 552 B.R. 781, 785 (D. Mass. 2015) ("[A]s the Adversary Proceeding is now ready for trial, the reference should be withdrawn if Defendant is entitled to a jury trial so it can be held in the District Court."). We decline to wade into whether the Guallinis' adversary claim is sufficiently ripe for trial to warrant withdrawal on this basis, nor whether this claim has been waived. However, the fact remains that the Guallinis sought a withdrawal of reference on this basis, and the district court did not engage their request. See In re Fin. Oversight & Mgmt. Bd. for P.R., 939 F.3d at 346.

## III

For the foregoing reasons, we **vacate** the decision of the district court and <u>remand</u> with instructions to **vacate** the decision of the bankruptcy court and to conduct further proceedings consistent with this opinion. Furthermore, we **vacate** the district court's denial of the motion for withdrawal of reference, and **remand** to the district court for further consideration of the motion for withdrawal consistent with this opinion.

Appellants shall recover their costs on appeal from appellee.